## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DESISLAVA DIMITROVA DRYANKOVA, | ) ) ) | |
| Plaintiff, | ) ) | No. 23 CV 07275 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| TODD BLANCH; MARKWAYNE MULLIN; JOSEPH B. EDLOW; and SAMUEL OLSON, | ) ) ) ) ) | |
| Defendants.[1] | ) ) | |

## ORDER

The plaintiff, Desislava Dimitrova Dryankova, seeks to become a U.S. citizen. United States Citizenship and Immigration Services ("USCIS") denied her application for naturalization on the grounds that Dryankova had misrepresented information about her son's parentage. Dryankova asks this Court to second-guess that decision. But as explained below, defendants' motion for summary judgment is granted because the undisputed facts show that Dryankova cannot meet her burden of demonstrating that she is eligible for naturalization. Judgment will be entered in favor of the defendants. Civil case terminated.

## STATEMENT

### I.       Background

Dryankova is a citizen of Bulgaria who entered the United States as a J-1 Exchange Visitor in 2002.[2] Defs.' 56.1 Statement 1 ¶¶ 1–2, ECF No. 22. She married Rafael Garcia, a United States citizen, in 2006. *See id.* 1 ¶ 3. In 2008, Dryankova gave birth to a son. The son's original birth certificate listed Dryankova's husband, Garcia, as the father, and the son's last name as Garcia. *Id.* at 2 ¶¶ 10–11. In 2013, Dryankova filed a certificate of correction request with the State of Illinois, seeking to amend the birth certificate to reflect that the child's father was actually Ivelin Petrov Kostov—a man with whom Dryankova had a romantic relationship. *Id.* at 1 ¶ 7; *id.* at 5 ¶ 35. An amended Illinois birth certificate listing Kostov as the father and changing the child's last name to Kostov was issued on August 27, 2013. *Id.* at 2 ¶ 8; Admin. R. 219, ECF No. 19-1.

---

[1] The government officials originally named as the defendants in this case no longer hold the offices designated in the complaint. Pursuant to Fed. R. Civ. P. 25(d), their successors are substituted, respectively, as the defendants in this action. The Clerk is directed to update the case caption accordingly.

[2] All of the facts in this section are undisputed unless otherwise noted.

It is unclear when, exactly, Dryankova met Kostov and began a relationship with him. In her sworn testimony to USCIS, Dryankova stated that she met Kostov on "New Years 2011/2012," and began a relationship with him in 2012. Admin. R. 207. The government disputes the accuracy of that statement, pointing to a Certificate of Title for a vehicle purchased by Dryankova and Kostov in 2007. Defs.' 56.1 Statement 6 ¶¶ 36–37. Everyone agrees, though, that Dryankova and Kostov were in a relationship by the time Dryankova sought to amend her son's birth certificate in 2013.

In 2015, Dryankova filed a Form I-360 petition with USCIS in which she identified as a self-petitioning spouse of an abusive U.S. citizen or lawful permanent resident (that is, Garcia). *Id.* at 2 ¶ 9. She submitted her son's original birth certificate with that petition—the birth certificate that listed his last name and father as Garcia. *Id.* at 2 ¶¶ 10–11. USCIS approved her I-360 petition on May 20, 2016. *Id.* at 2 ¶ 12. Subsequently, Dryankova filed an application to register as a lawful permanent resident (Form I-485) on the basis of her approved I-360 petition. *Id.* at 2 ¶ 13. Again, Dryankova gave USCIS her son's original birth certificate. *Id.* at 2 ¶ 14. Dryankova became a lawful permanent resident of the United States on May 24, 2017. *Id.* at 3 ¶ 16.

Dryankova applied for naturalization in 2020. *Id.* at 3 ¶ 17. As part of that application process, Dryankova provided USCIS with her son's amended birth certificate, listing Kostov as the father. She also testified under oath that she had never "given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading." Admin. R. 480. USCIS denied Dryankova's naturalization application, alleging that she misrepresented her son's parentage to become a lawful permanent resident and made false statements under oath at her naturalization interview. *Id.* at 3 ¶ 20; Admin. R. 618–25. Dryankova then filed this action seeking *de novo* review of her naturalization application. The defendants filed for summary judgment.

## II.     Discussion

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which directs courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of "identify[ing] 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citation modified) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, a nonmovant who bears the burden of proof at trial, as Tyson does here, must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

Unlike on a motion to dismiss, a non-movant contesting a summary judgment motion cannot rely on the allegations in her complaint to establish genuine issues of material fact, but instead must point to facts in the record. *Weaver v. Champion Petfoods LP*, 3 F.4th 927, 934 (7th Cir. 2021). A genuine issue exists when "a reasonable jury could return a verdict for the non-moving party." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022)). Thus, on reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the nonmovant. *Speedway, LLC*, 28 F.4th at 820.

Dryankova seeks relief under 8 U.S.C. § 1421(c), which provides that a person whose application for naturalization is denied may seek *de novo* review of the denial in federal court. She also purports to seek relief under the Administrative Procedure Act ("APA"), but as the defendants rightly note, the APA only permits judicial review where "there is no other adequate remedy in a court." 5 U.S.C. § 704. Because § 1421(c) is available, the APA is not. *See Heslop v. Att'y Gen.*, 594 F. App'x 580, 584 (11th Cir. 2014) ("Here, the INA gives [the plaintiff] an adequate remedy: the ability to seek in federal district court *de novo* review of USCIS's denial of his application for naturalization after he exhausts his administrative remedies.").

On *de novo* review under § 1421(c), the applicant has the burden of demonstrating her eligibility for naturalization by a preponderance of the evidence. *Bijan v. U.S. Citizenship & Immigr. Servs.*, No. 15-cv-10636, 2017 WL 8793430, at *3 (N.D. Ill. Nov. 17, 2017). Because "the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship[,] . . . doubts 'should be resolved in favor of the United States and against the claimant.'" *Berenyi v. Dist. Dir.*, 385 U.S. 630, 637 (1967). An applicant for naturalization must meet **all** of the statutory naturalization requirements for their petition to succeed. 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise.").

Two requirements are at issue here: first, that no person can be naturalized "unless he has been lawfully admitted to the United States for permanent residence," 8 U.S.C. § 1429, and second, that an applicant must demonstrate "good moral character" for the three years prior to naturalization, *id.* § 1427(a); *id.* § 1430(a). USCIS argues that it is entitled to summary judgment because there is no material dispute of fact that Dryankova fails to meet both requirements—the former because she obtained her lawful permanent resident status based on a misrepresentation, and the latter because she made false statements under oath at her naturalization interview. Mot. Summ. J. Mem. 1, ECF No. 21. Dryankova responds first that whether or not she lied in her application to become a lawful permanent resident is irrelevant, because having a child with her U.S. citizen spouse was not a requirement to qualify for that benefit. Resp. Mem. 2–3, 6, ECF No. 24. As for good moral character, so far as this Court can understand her argument, Dryankova simply disputes that she provided false or misleading information. *Id.* at 9–10.

This Court's discussion begins and ends with the requirement of good moral character. A person cannot be found to have good moral character if they have given false testimony in order to obtain any immigration benefits during the three-year statutory period. 8 U.S.C. § 1101(f)(6). The Seventh Circuit's decision in *Bijan v. U.S. Citizenship & Immigr. Servs.*, 900 F.3d 942 (7th Cir. 2018) is directly on point. As relevant here, the applicant for naturalization in *Bijan* falsely stated that he had no children on his original visa application, under which he was granted lawful permanent residence. *Id.* at 944. He subsequently applied for naturalization, and as part of that process, testified that he had "never given 'false or misleading information' while 'applying for any immigration benefit.'" *Id.* at 946. The Seventh Circuit found his testimony "clearly false" given the inaccurate statement that he had no children on his visa application and that his testimony was "intended to obtain an immigration benefit—naturalization." *Id.* The court therefore held that the applicant could not meet his burden of demonstrating he was eligible for naturalization. *Id.*

3

This case presents facts substantially similar to those in *Bijan*. Dryankova submitted an outdated birth certificate for her son with her I-360 and I-485 forms. There is no way to interpret that action as anything but misleading—Dryankova provided the government a record that had outdated information, without indicating that an updated version existed.[3] She knew that providing the original birth certificate had been misleading by the time she submitted her naturalization application, because she provided USCIS with the updated birth certificate at that time. *See id.* ("By the time Bijan testified in November 2012 that he had 'never given false or misleading information,' he had to have known his statement was false. Because of this, Bijan cannot meet his burden of establishing eligibility for naturalization."). When Dryankova testified as part of her naturalization application that she had never provided U.S. government officials with any misleading documentation, that testimony was false—and she knew it.[4] Dryankova does not dispute that she provided the government an outdated birth certificate for her son, nor does she dispute that she answered "no" to the question of whether she had ever provided misleading documentation. Dryankova's false statement, made as part of her naturalization application, in and of itself is sufficient to find that Dryankova cannot demonstrate that she had good moral character during the statutory period.

\* \* \*

[3] Though Dryankova's response to the defendants' Rule 56.1 statement says that "Plaintiff submitted, with her I-485 and her N-400 applications, both the original (or a certified copy) and an amended birth certificate (or certified copy) of her child," Pl.'s Opp'n Defs.' Rule 56.1 Statement 6 ¶ 25, ECF No. 26, no citation is provided and the administrative record does not reflect the amended birth certificate as one of the documents Dryankova submitted with her I-485 application. Admin. R. 232–47 Moreover, that assertion directly contradicts Dryankova's admission, in the same document, that "On her Form I-485 adjustment application, Dryankova listed her first child's family name as 'Garcia' and not 'Kostov,' AR 233, by again providing **only** that first child's prior, unamended birth certificate, issued on September 25, 2008, listing Mr. Garcia as the father and the child's last name as 'Garcia.'" Defs.' 56.1 Statement 2 ¶ 14 (emphasis added); Pl.'s Opp'n Defs.' Rule 56.1 Statement 5 ¶ 14. In any case, nowhere does Dryankova dispute that she only provided the original birth certificate with her I-360 petition.

[4] The government theorizes that Dryankova provided the outdated birth certificate identifying Garcia as the father to bolster the bona fides of her marriage to Garcia. Her specific reason for providing false or misleading information, however, is not relevant so long as it was for the purpose of obtaining a naturalization benefit.

4

Because Dryankova lacked good moral character, the Court need not reach the parties' arguments about whether Dryankova was lawfully admitted for permanent residence. The defendants are entitled to summary judgment.

Dated: April 29, 2026

John J. Tharp, Jr.
United States District Judge